**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **WILLIAM F. QUEZADA,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **SUE MARSHALL, et al.,** <br><br> **Defendants.** |

**Civil Action 12-518  (RC)**

**MEMORANDUM OPINION**

According to his complaint, William Quezada owns an apartment building that, while he
was married and for some time after, was held in the name of his now ex-wife.  Mr. Quezada
alleges that the District of Columbia Housing Authority and The Community Partnership for the
Prevention of Homelessness both rented units in the building and, for a period of time after his
divorce, paid rent to his ex-wife when they should have been paying him.  He has brought suit
*pro se* under 42 U.S.C. § 1983, naming officials in both organizations as defendants, along with
the mayor, the city council, and his ex-wife.  The defendants have moved to dismiss the case
(except for his ex-wife, who has not been served).  Their motions will be granted, because Mr.
Quezada has not alleged any violation of rights guaranteed by federal law and therefore cannot
sue under section 1983.  The court will decline to exercise supplemental jurisdiction over any
non-federal claims.

**I.  BACKGROUND**

In his complaint, William Quezada alleges that he and Ms. Lopez,[1] his ex-wife, owned an

---

[1]  The initial complaint refers to Maria E. Lopez; the amendment names Elena A. Lopez.
The court will refer to Mr. Quezada's ex-wife as Ms. Lopez.

apartment building while they were married.  Compl. at 4.  Ownership of the building, then

valued at $731,800 and held in the name of Ms. Lopez, was divided at the time of their divorce,

with Mr. Quezada receiving a forty percent share.  *Id.*; Order at 1, *Quezada v. Lopez*, 04-DRB-

560, 04-DRB-1282 (D.C. Sup. Ct. Dec. 9, 2009) ("Order").[2]  Ms. Lopez later obtained a

$445,000 mortgage on the building without the consent of Mr. Quezada, who sued and was

awarded full ownership of the property, encumbered by the mortgage.  Compl. at 4–5; Order at

2–3.  In December 2009, the Superior Court of the District of Columbia ordered Ms. Lopez to

immediately quitclaim all rights in the property to her ex-husband.  Compl. at 5; Order at 3.  Ms.

Lopez did not transfer her interests promptly.  Compl. at 5; Letter from William F. Quezada to

Hans Froelicher IV, General Counsel, District of Columbia Housing Authority, at 2 (Feb. 10,

2012) (stating that Ms. Lopez was "continuously refusing to sign the transfer in accordance with

the sentence of December 9[ ], 2009").

     The apartment building has twelve units, some of which were rented to the District of

Columbia Housing Authority for use by participants in its Housing Choice Voucher

Program—formerly known as Section 8—and others to The Community Partnership for the

Prevention of Homelessness, a non-profit organization.  Compl. at 5.  Mr. Quezada "ha[d] the

impression that from December 2009 the rents of the building were placed in an escrow account

by [the] Housing Authority until such time [as Ms.] Lopez sign[ed] the" quitclaim.  *Id.*; Affidavit

of William F. Quezada (Jan. 13, 2011) ("[F]rom the date of December 9, 2009 until very

---

    [2]  All of the documents to which the court refers were attached as exhibits to the
complaint and the defendants do not question their authenticity; they may therefore be
considered on a motion to dismiss.  *See Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 867 & note
(D.C. Cir. 2008); *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir.
1997).

recently, I've been under the impression that the funds that the District of Columbia paid for the monthly rent for several apartments was deposited in an escrow account without being paid to my ex-wife or to me."). In April 2011, Mr. Quezada inquired about the funds that he thought were being held in escrow, but was told that the Housing Authority and The Community Partnership were still making payments directly to Ms. Lopez. Compl. at 6. The Housing Authority explained that this was because its records still showed Ms. Lopez to be the owner of the apartment building. Letter from Nicole C. Mason, Associate General Counsel, D.C. Housing Authority, at 1 (Feb. 2, 2012) ("[A]s of your April, 2011, visit, you had not taken steps to transfer ownership of the Property so that [the Housing Authority] could begin making monthly [payments] to you."). By September 2011, Mr. Quezada had proven that he was the owner of the property and began receiving the payments that he was owed. Compl. at 6 ("The payment[s] continue[d] to Maria E. Lopez until September 2011."); Letter from Nicole Mason, at 1 ("[I]n or about August, 2011, when you provided the requested information to [the Housing Authority], you began receiving [payments] related to the assistance tenancies in the Property.")

While attempting to resolve the question of rent payments, Mr. Quezada contacted many of the defendants, including Michael Brown, then a member of the Council of the District of Columbia and chairman of its Housing Committee, "personally visiting his office and by email requesting his intercession in this matter." Compl. at 6; *see also* Email from William Quezada to Councilmembers Kwame Brown, Michael Brown, Jim Graham, and Vincent Orange, and Sue Marshall, Executive Director, The Community Partnership for the Prevention of Homelessness, and Others (Nov. 4, 2011); Email from William Quezada to Councilmembers Marion Barry, Kwame Brown, Michael Brown, Phil Mendelson, Jim Graham, and Others (Oct. 29, 2011). Some of the defendants encouraged Mr. Quezada to sue Ms. Lopez to recover the rents that had

been paid to her.  Compl. at 6.; *cf.* Letter from Nicole Mason ("The distribution/recovery of the [payments] for the period at issue is a matter for resolution between you and your ex-wife.").  Mr. Quezada did not, however, believe that he had grounds on which to file such a suit.  *See* Letter from William F. Quezada to Hans Froelicher IV, at 2 ("I believe that I do not have any legal basis to sue [Ms.] Lopez . . . .").  Instead, Mr. Quezada informed the Housing Authority that he would "file [a] civil suit against the D.C. Mayor, all the City Council, [the] executive director [of the] Housing Authority and [the] director of [the] Housing Choice Voucher Program in the U.S. Federal Court for the District of Columbia" unless he was promptly paid the money that he claimed to be owed.  Letter from William F. Quezada to Hans Froelicher IV, at 2.  And he did just that.

In his complaint, Mr. Quezada named the following defendants: Sue Marshall, Executive Director of The Community Partnership; Adrianne Todman, Executive Director for the District of Columbia Housing Authority; Ronald McCoy, Director of the Housing Choice Voucher Program for the District of Columbia Housing Authority; Vincent Gray, Mayor of the District of Columbia; and the members of the Council of the District of Columbia.[3]  With the court's leave, Mr. Quezada amended his complaint to add his ex-wife as a defendant.

Mr. Quezada frames this action as one brought under 42 U.S.C. § 1983 for the violation of his civil rights.  Compl. at 7; Civil Cover Sheet, at 2.  Construed liberally, his complaint alleges that the Housing Authority and The Community Partnership had a legal obligation to pay rent to him, Compl. at 5, that all of the defendants except Ms. Lopez had a duty to recoup federal

---

[3]  When this suit was filed, the members of the Council were Yvette Alexander, Marion Barry, Kwame Brown, Michael Brown, Muriel Bowser, David Catania, Mary Cheh, Jack Evans, Jim Graham, Phil Mendelson, Vincent Orange, and Tommy Wells.

funds that were wrongfully paid to her, *id.* at 6, and that the Housing Authority retaliated against him for pursuing the payments he was due by discouraging potential tenants from choosing his apartment building, thereby violating his civil rights, *id.* at 7.  He also alleges that his civil rights were violated when Councilman Michael Brown and others failed to intercede on his behalf, and that a stroke he suffered in 2010 was caused by their refusal of his requests for help.  *Id.* at 6. Finally, he alleges that Ms. Lopez is liable to him for wrongfully collecting rent payments and for violating his civil rights in unspecified ways.  Am. Compl. at 2.

The defendants—with the exception of Ms. Lopez, who has not been served—have moved to dismiss the complaint for failure to state a claim on which relief can be granted. Because Mr. Quezada has not alleged the violation of rights protected by federal law, his claims brought under 42 U.S.C. § 1983 will be dismissed.  The court will decline to exercise supplemental jurisdiction over any remaining claims.

## II.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  Such motions allege that a plaintiff has not properly stated a claim; they do not test a plaintiff's ultimate likelihood of success on the merits.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  The complaint is only required to set forth a short and plain statement of the claim, in order to give the defendant fair notice of the claim and the grounds upon which it rests.  *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A court considering this type of motion presumes the factual allegations of the complaint to be true and construes them liberally in the plaintiff's favor. *See, e.g.*, *United States v. Philip*

*Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).  It may also consider "any documents either attached to or incorporated in the complaint."  *St. Francis Xavier*, 117 F.3d at 624.  The court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242.

It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14 (2002), or to plead law or match facts to every element of a legal theory, *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal citations omitted).  Nonetheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007).  A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Applying the same standards, a "district court may dismiss a complaint *sua sponte* for failure to state a claim if it is 'patently obvious' that the plaintiff cannot prevail." *Scott v. United States*, 275 Fed. App'x 21 (D.C. Cir. 2008) (per curiam) (quoting *Baker v. Director, U.S. Parole Comm'n*, 916 F.2d 725, 727 (D.C. Cir. 1990) (per curiam)); *see also Jaeger v. United States*, 2006 WL 1518938, at *1 (D.D.C. May 26, 2006) ("Where . . . the failure to state a claim is

patent, 'it is practical and fully consistent with plaintiffs' rights and the efficient use of judicial resources' for the Court to dismiss the action *sua sponte*.") (quoting *Baker*, 916 F.2d at 726).

## III. ANALYSIS

Section 1983 provides a cause of action against

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

42 U.S.C. § 1983.  A plaintiff bringing a § 1983 claim "must allege both (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the defendant acted 'under color of' the law of a state, territory or the District of Columbia." *Hoai v. Vo*, 935 F.2d 308, 312 (D.C. Cir. 1991).  The court considers the allegations against each defendant in turn.

### A.  Mayor Vincent Gray

Mr. Quezada does not make any factual allegations either specifically against Mayor Gray or generally against the District of Columbia, which is legally distinct from its Housing Authority.  *See* D.C. CODE § 6-202(a) ("The Authority shall be a corporate body, . . . and shall have a legal existence separate from the District government.").  Mr. Quezada does not allege that the Mayor or the District violated any of his federal rights, either by acting or by failing to act.[4]  All federal claims against Mayor Gray will therefore be dismissed for failure to state a

---

[4]  Mr. Quezada also alleges that Mayor Gray and the other "defendants failed in their fiduciary duties to protect the resources of the government when they did not try to recover from Ms. Lopez the amounts that she with fraud obtained." Compl. at 6.  But this is not an allegation that a fiduciary duty was owed to *him*, and Mr. Quezada does not allege any factual grounds (or identify any legal grounds) that would give him the right to bring suit over a duty that the defendants allegedly owed to either the District of Columbia or the United States.  The claim for

claim on which relief can be granted.

### B.  The Councilmembers

Mr. Quezada alleges that Councilmember Michael Brown did not intercede on his behalf with either the Housing Authority or The Community Partnership.  Emails attached to the complaint indicate that Mr. Quezada also requested the assistance of other members of the Council.  But Mr. Quezada does not identify any legal right to that assistance, nor any legal wrong that the Council or its members committed against him.  A general assertion that Councilmember Michael Brown or other members of the Council violated Mr. Quezada's civil rights does not provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  All federal claims against the members of the Council of the District of Columbia will therefore be dismissed for failure to state a claim on which relief can be granted.

### C.  The Community Partnership

Mr. Quezada alleges that The Community Partnership, a private non-profit organization that receives public funds, Compl. at 5, paid rent to his ex-wife when it should have been paying him.  He does not identify any federal right to those payments—as opposed to a simple contractual right, which would be grounded in D.C. private law, not federal law—or any basis for the fiduciary duty that The Community Partnership allegedly owed to him.  Compl. at 6.  Nor does he allege that The Community Partnership acted under color of District law—that is, he does not allege that it was effectively acting as the District government.  *Cf. Williams v. United States*, 396 F.3d 412, 414 (D.C. Cir. 2005).  He has therefore failed to state a claim that can be

---

a breach of fiduciary duty will therefore be dismissed as to all defendants.

brought under section 1983.  The court will dismiss all federal claims brought against Sue

Marshall as executive director of The Community Partnership for failure to state a claim on

which relief can be granted.

### D.  The District of Columbia Housing Authority

Mr. Quezada similarly alleges that the D.C. Housing Authority paid to his ex-wife rent

that was due to him.  Once again, he alleges no federal constitutional or statutory right to those

payments, nor any basis for a fiduciary duty owed to him.  He makes one additional allegation

against the Housing Authority alone: that it retaliated against him for demanding payment by

chasing potential tenants away from his building.  Construing the complaint very liberally

indeed, this may be an allegation that Mr. Quezada's equal protection rights were violated.  He

does not suggest that the alleged  retaliation was motivated by his membership in any protected

class, but even a "class of one" can prevail in certain circumstances.  *See Village of Willowbrook*

*v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (holding that the Fourteenth Amendment—and

therefore also the Fifth Amendment—"gives rise to a cause of action on behalf of a 'class of one'

where the plaintiff did not allege membership in a class or group").

There are "two essential elements" to a "'class of one' equal protection claim: (1)

disparate treatment of similarly situated parties (2) on no rational basis."  *3883 Conn. LLC v.*

*District of Columbia*, 336 F.3d 1068, 1075 (D.C. Cir. 2003) (citing *Village of Willowbrook*, 528

U.S. at 564 ("Our cases have recognized successful equal protection claims brought by a 'class

of one,' where the plaintiff alleges that she has been intentionally treated differently from others

similarly situated and that there is no rational basis for the difference in treatment.")).  Mr.

Quezada fails to allege the first element: the existence of a "similarly situated person . . . who

was treated differently."  *Tate v. District of Columbia*, 627 F.3d 904, 910 (D.C. Cir. 2010) (citing

*Village of Willowbrook*, 528 U.S. at 564).  This requirement is not a mere formality.  Rather, it serves to distinguish claims to the treatment that was afforded others, which can be cognizable under principles of equal protection, from bare complaints of governmental unfairness, which cannot.  *Cf. Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) ("Class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.") (brackets and quotation marks omitted); *Patin v. Richard*, 2011 WL 9118, at *7 (W.D. La. Jan. 3, 2011) (dismissing a claim where plaintiff "fails to allege any other similarly situated person, much less a class of such persons"); *Fan v. Brewer*, 2009 WL 1743824, at *8  (S.D. Tex. June 17, 2009) (denying leave to amend on the same grounds); *Retzlaff v. de la Vina*, 606 F. Supp. 2d 654, 658 (W.D. Tex. 2009) (granting summary judgment).

Because Mr.Quezada has not adequately alleged the violation of any federal right, his federal claims against Adrianne Todman and Ronald McCoy, respectively Executive Director and Director of the Housing Choice Voucher Program for the District of Columbia Housing Authority, will be dismissed for failure to state a claim on which relief can be granted.

**E.  Ms. Lopez**

Mr. Quezada's ex-wife is not a state actor and therefore not a proper defendant in a suit brought under section 1983.  *See Williams*, 396 F.3d at 414.  All federal claims against her will be dismissed *sua sponte* because it is patently obvious that those claims will fail as a matter of law.  Mr. Quezada may have a claim against Ms. Lopez for rents she collected that were due to him, but that claim would be based in District law, not federal law.

## IV.  CONCLUSION

For the reasons discussed above, all federal claims brought by Mr. Quezada will be dismissed for failure to state a claim on which relief can be granted.  All other claims will be dismissed in accordance with 28 U.S.C. § 1367(c)(3), under which "district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."

Rudolph Contreras
United States District Judge

Date: January 15, 2013